# Exhibit A

 **CT** Corporation

**Service of Process Transmittal**
06/04/2018
CT Log Number 533450592

TO: Stacie Simpson
Navigant Consulting
Pace Claim Services, LLC, 100 American Metro Blvd Ste 108
Hamilton, NJ 08619-2319

RE: **Process Served in Delaware**

FOR: Crane Co.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Paul E. Cruise, Pltf. vs. Air & Liquid Systems Corporation, etc., et al., Dfts. // To: CRANE CO. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Richland County Court of Common Pleas, SC<br>Case # 2018CP4002849 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/04/2018 at 13:25 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after the service thereof, exclusive of the day of such service |
| **ATTORNEY(S) / SENDER(S):** | Jonathan M. Holder<br>DEAN OMAR BRANHAM, LLP<br>302 N. Market Street<br>Ste. 300<br>Dallas, TX 75202 |
| **REMARKS:** | The documents received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/05/2018, Expected Purge Date: 06/10/2018<br><br>Image SOP<br><br>Email Notification,  Stacie Simpson  PACEservice@paceclaims.com<br><br>Email Notification,  Crane Co. SOP  CraneCoCTService@klgates.com |
| **SIGNED:** | The Corporation Trust Company |
| **ADDRESS:** | 1209 N Orange St<br>Wilmington, DE 19801-1120 |
| **TELEPHONE:** | 302-658-7581 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
                              ) FOR THE FIFTH JUDICIAL CIRCUIT
COUNTY OF RICHLAND ) C/A NO. _____

**PAUL E. CRUISE,** )
                              )
              Plaintiff, ) In Re:
vs. ) Asbestos Personal Injury Litigation
                              ) Coordinated Docket
**AIR & LIQUID SYSTEMS CORPORATION,** )
individually and as successor-in-interest to )
BUFFALO PUMPS ) Living Mesothelioma
                              )
**AIW-2010 WIND DOWN CORP.,** )
individually and successor-in-interest to )
AMERICAN INSULATED WIRE ) **SUMMONS**
CORPORATION )
                              ) (Jury Trial Demanded)
**ALFA LAVAL, INC.** )
                              )
**API HEAT TRANSFER, INC.** )
                              )
**ARMSTRONG INTERNATIONAL, INC.** )
                              )
**AT&T CORPORATION** )
                              )
**AURORA PUMP COMPANY** )
                              )
**CARRIER CORPORATION** )
                              )
**CBS CORPORATION,** a Delaware corporation, )
f/k/a VIACOM INC., successor by merger to CBS )
CORPORATION, a Pennsylvania corporation, )
f/k/a WESTINGHOUSE ELECTRIC )
CORPORATION, and also as successor-in-interest )
to BF STURTEVANT; )
                              )
**CLARK-RELIANCE CORPORATION,** )
successor-in-interest to JERGUSON GAGE & )
VALVE COMPANY )
                              )
**COVIL CORPORATION** )
                              )
**CRANE CO.** )

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

**CROSBY VALVE, LLC**

**DANIEL INTERNATIONAL CORPORATION** f/k/a DANIEL CONSTRUCTION COMPANY, INC.;

**EATON CORPORATION**

**ECODYNE CORPORATION**

**FISHER CONTROLS INTERNATIONAL, LLC**, wholly owned subsidiary of EMERSON ELECTRIC COMPANY

**FLOWSERVE US, INC.**

**FLUOR CONSTRUCTORS INTERNATIONAL**, f/k/a/ FLUOR CORPORATION

**FLUOR CONSTRUCTORS INTERNATIONAL, INC.**

**FLUOR DANIEL SERVICES CORPORATION**

**FLUOR ENTERPRISES, INC.**

**FMC CORPORATION,** individually and as successor-in-interest to NORTHERN PUMPS

**FOSTER WHEELER ENERGY CORPORATION**

**GARDNER DENVER, INC.**

**GENERAL ELECTRIC COMPANY**

**GOULDS PUMPS, INC.,** d/b/a GOULDS PUMPS (IPG) LLC

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

**IMO INDUSTRIES, INC.,**
individually and successor-in-interest to
IMO DELAVAL                                                )

**INGERSOLL-RAND COMPANY**                    )

**JERGUSON GAGE & VALVE COMPANY,**    )
d/b/a CLARK RELIANCE CORPORATION      )

**McNALLY INDUSTRIES, LLC,**                    )
successor-in-interest to NORTHERN FIRE    )
APPARATUS                                                  )

**MARMON ENGINEERED WIRE & CABLE**  )
**LLC,** individually and as successor-in-interest to  )
TE WIRE & CABLE LLC, f/k/a THERMO-      )
ELECTRIC WIRE & CABLE CO.                     )

**METROPOLITAN LIFE INSURANCE**          )
**COMPANY,** a wholly-owned subsidiary of     )
METLIFE INC.;                                             )

**THE NASH ENGINEERING COMPANY**        )

**NOKIA OF AMERICA CORPORATION,**        )
individually and as successor-in-interest to      )
ALCATEL-LUCENT USA INC., successor-in-   )
interest to LUCENT TECHNOLOGIES INC, as  )
successor in interest to WESTERN ELECTRIC  )
COMPANY, INC., and as successor in interest to )
BELL LABORATORIES, INC.                         )

**OCCIDENTAL CHEMICAL**                        )
**CORPORATION,** f/k/a HOOKERS CHEMICAL )
CO., and as successor to DUEZ CORPORATION )

**ROCKWELL AUTOMATION INC.,**              )
individually and as successor-in-interest ALLEN-  )
BRADLEY COMPANY LLC, f/k/a ROCKWELL   )
INTERNATIONAL CORPORATION                 )

**SCHNEIDER ELECTRIC USA, INC.,**           )
f/k/a SQUARE D COMPANY                          )

**SOUTHWIRE COMPANY, LLC,**                  )
                                                               )

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

individually and successor-in-interest to    )
AMERICAN INSULATED WIRE    )
CORPORATION    )
    )
**SPIRAX SARCO, INC.**    )
    )
**THERMO ELECTRIC COMPANY, INC.,**    )
f/k/a THERMO-ELECTRIC WIRE & CABLE    )
CO.    )
    )
**TRANE U.S., INC.,**    )
f/k/a AMERICAN STANDARD COMPANIES,    )
successor-in-interest to AMERICAN BLOWER    )
COMPANY    )
    )
**WARREN PUMPS, LLC**    )
    )
**WEIR VALVES & CONTROLS USA, INC.,**    )
f/k/a ATWOOD & MORRILL CO., INC.,    )
    )
        Defendants.    )
    )

## SUMMONS

**TO:**    **DEFENDANTS**

YOU ARE HEREBY SUMMONED and are required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer upon the office of Plaintiff's counsel, Dean Omar Branham, LLP located at 302 N. Market Street, 3rd Floor, Dallas, Texas 75202, within thirty (30) days after the service thereof, exclusive of the day of such service.

Respectfully submitted,

**DEAN OMAR BRANHAM, LLP**

By: */s/ Jonathan M. Holder*
    Jonathan M. Holder- (SC Bar No. 77935)
    Jessica M. Dean- (TX Bar No. 24040777)
    To be admitted *pro hac vice*
    Charles W. Branham, III, (TX Bar No. 24012323)
    Admitted *pro hac vice*

302 N. Market Street, Ste. 300
Dallas, Texas 75202


Theile B. McVey
Kassel & McVey Attorneys at Law
1330 Laurel Street
Post Office Box 1476
Columbia, South Carolina 29202

ATTORNEYS FOR PLAINTIFF

May 25, 2018
Dallas, Texas

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

STATE OF SOUTH CAROLINA   )   IN THE COURT OF COMMON PLEAS
   )   FOR THE FIFTH JUDICIAL CIRCUIT
COUNTY OF RICHLAND   )   C/A NO. _____

|  |  |
|---|---|
| **PAUL E. CRUISE,** | |
| Plaintiff, | In Re: |
| vs. | Asbestos Personal Injury Litigation |
| | Coordinated Docket |
| **AIR & LIQUID SYSTEMS CORPORATION,** | |
| individually and as successor-in-interest to | Living Mesothelioma |
| BUFFALO PUMPS | |
| | |
| **AIW-2010 WIND DOWN CORP.,** | |
| individually and successor-in-interest to | **COMPLAINT** |
| AMERICAN INSULATED WIRE | |
| CORPORATION | |
| | (Jury Trial Demanded) |
| **ALFA LAVAL, INC.** | |
| | |
| **API HEAT TRANSFER, INC.** | |
| | |
| **ARMSTRONG INTERNATIONAL, INC.** | |
| | |
| **AT&T CORPORATION** | |
| | |
| **AURORA PUMP COMPANY** | |
| | |
| **CARRIER CORPORATION** | |
| | |
| **CBS CORPORATION**, a Delaware corporation, | |
| f/k/a VIACOM INC., successor by merger to CBS | |
| CORPORATION, a Pennsylvania corporation, | |
| f/k/a WESTINGHOUSE ELECTRIC | |
| CORPORATION, and also as successor-in-interest | |
| to BF STURTEVANT; | |
| | |
| **CLARK-RELIANCE CORPORATION,** | |
| successor-in-interest to JERGUSON GAGE & | |
| VALVE COMPANY | |
| | |
| **COVIL CORPORATION** | |
| | |
| **CRANE CO.** | |

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

**CROSBY VALVE, LLC**                    )
                                          )
**DANIEL INTERNATIONAL**                  )
**CORPORATION** f/k/a DANIEL              )
CONSTRUCTION COMPANY, INC.;               )
                                          )
**EATON CORPORATION**                     )
                                          )
**ECODYNE CORPORATION**                   )
                                          )
**FISHER CONTROLS INTERNATIONAL,**        )
**LLC,** wholly owned subsidiary of EMERSON )
ELECTRIC COMPANY                          )
                                          )
**FLOWSERVE US, INC.**                    )
                                          )
**FLUOR CONSTRUCTORS**                    )
**INTERNATIONAL,** f/k/a/ FLUOR           )
CORPORATION                               ).
                                          )
**FLUOR CONSTRUCTORS**                    )
**INTERNATIONAL, INC.**                   )
                                          )
**FLUOR DANIEL SERVICES**                 )
**CORPORATION**                           )
                                          )
**FLUOR ENTERPRISES, INC.**               )
                                          )
**FMC CORPORATION,**                      )
individually and as successor-in-interest to )
NORTHERN PUMPS                            )
                                          )
**FOSTER WHEELER ENERGY**                 )
**CORPORATION**                           )
                                          )
**GARDNER DENVER, INC.**                  )
                                          )
**GENERAL ELECTRIC COMPANY**              )
                                          )
**GOULDS PUMPS, INC.,**                   )
d/b/a GOULDS PUMPS (IPG) LLC              )
                                          )
**IMO INDUSTRIES, INC.,**                 )
individually and successor-in-interest to )
IMO DELAVAL                               )
                                          )

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

**INGERSOLL-RAND COMPANY**                                    )
                                                             )
**JERGUSON GAGE & VALVE COMPANY**,                           )
d/b/a CLARK RELIANCE CORPORATION                             )
                                                             )
**McNALLY INDUSTRIES, LLC,**                                 )
successor-in-interest to NORTHERN FIRE                       )
APPARATUS                                                    )
                                                             )
**MARMON ENGINEERED WIRE & CABLE**                           )
**LLC,** individually and as successor-in-interest to        )
TE WIRE & CABLE LLC, f/k/a THERMO-                           )
ELECTRIC WIRE & CABLE CO.                                    )
                                                             )
**METROPOLITAN LIFE INSURANCE**                              )
**COMPANY**, a wholly-owned subsidiary of                    )
METLIFE INC.;                                                )
                                                             )
**THE NASH ENGINEERING COMPANY**                             )
                                                             )
**NOKIA OF AMERICA CORPORATION,**                            )
individually and as successor-in-interest to                 )
ALCATEL-LUCENT USA INC., successor-in-                       )
interest to LUCENT TECHNOLOGIES INC, as                      )
successor in interest to WESTERN ELECTRIC                    )
COMPANY, INC., and as successor in interest to               )
BELL LABORATORIES, INC.                                      )
                                                             )
**OCCIDENTAL CHEMICAL**                                      )
**CORPORATION,** f/k/a HOOKERS CHEMICAL                      )
CO., and as successor to DUEZ CORPORATION                    )
                                                             )
**ROCKWELL AUTOMATION INC.,**                                )
individually and as successor-in-interest ALLEN-             )
BRADLEY COMPANY LLC, f/k/a ROCKWELL                          )
INTERNATIONAL CORPORATION                                    )
                                                             )
**SCHNEIDER ELECTRIC USA, INC.,**                            )
f/k/a SQUARE D COMPANY                                       )
                                                             )
**SOUTHWIRE COMPANY, LLC,**                                  )
individually and successor-in-interest to                    )
AMERICAN INSULATED WIRE                                      )
CORPORATION                                                  )
                                                             )
**SPIRAX SARCO, INC.**                                       )

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

| | |
|---|---|
| **THERMO ELECTRIC COMPANY, INC.,** f/k/a THERMO-ELECTRIC WIRE & CABLE CO. | ) ) ) ) ) |
| **TRANE U.S., INC.,** f/k/a AMERICAN STANDARD COMPANIES, successor-in-interest to AMERICAN BLOWER COMPANY | ) ) ) ) ) |
| **WARREN PUMPS, LLC** | ) ) |
| **WEIR VALVES & CONTROLS USA, INC.,** f/k/a ATWOOD & MORRILL CO., INC., | ) ) ) |
| Defendants. | ) ) |

## GENERAL ALLEGATIONS

Plaintiff, PAUL E. CRUISE (hereinafter "Plaintiff"), comes before this court and complains and alleges as follows:

1.      Plaintiff Paul E. Cruise has been diagnosed with mesothelioma.

2.      From approximately June 1961 to June 1965, Plaintiff Paul E. Cruise served in the United States Navy as a Boiler Tender. During this period, Plaintiff Paul E. Cruise worked with various types of machinery and equipment that exposed him to asbestos containing materials. Further during this time period, Plaintiff Paul E. Cruise was exposed to these products while serving at the Charleston Naval Shipyard in North Charleston, South Carolina.

3.      From approximately 1965 until the present, Paul E. Cruise has been employed as a professional electrician at various sites throughout the southeastern United States, including South Carolina. Mr. Cruise primarily worked at commercial sites. Paul E. Cruise's work included repair, maintenance and renovations, as well as building from the ground up. Paul E. Cruise has installed, maintained and repaired various types of electrical equipment, including but not limited

4

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

to transformers, arc chutes, arc shields, switch gears, insulated wire, conduit, and electrical panels, all of which exposed him to asbestos. In addition to exposure to asbestos containing electrical equipment as outlined herein, Paul E. Cruise's electrical contractor work brought him into contact with various types of machinery and equipment that required him to come into contact with asbestos containing materials. During the course of his employment as a professional electrician, Paul E. Cruise worked at sites including, but not limited to White Horse I and II in Greenville, SC; Utica Mohawk in Clemson, SC; a sewing plant in Wallhala, SC; and Baxter Health Care in Baxter County, SC.

4.      During the course of Plaintiff's employment at the location(s) mentioned above, during both occupational and non-occupational work projects and in other ways, Plaintiff Paul E. Cruise was exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers emanating from certain products he was working with and around. Plaintiff Paul E. Cruise worked around other trades, including but not limited to asbestos-containing products and equipment.

5.      Plaintiff Paul E. Cruise's cumulative exposure to asbestos as a result of acts and omissions of Defendants and their defective products, individually and together, was a substantial factor in causing Plaintiff's mesothelioma and other related injuries and therefore under South Carolina law, is the legal cause of Plaintiff's injuries and damages.

6.      Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

7.      Each of the named Defendants is liable for damages stemming from its own tortious conduct or the tortious conduct of an "alternate entity" as hereinafter defined. Defendants are liable for the acts of their "alternate entity" and each of them, in that there has been a corporate name change, Defendant is the successor by merger, by successor in interest, or by other

5

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

acquisition resulting in a virtual destruction of Plaintiff's remedy against each such "alternate entity"; Defendants, each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entities" have acquired the assets, product line, or a portion thereof of each such Defendant; Defendants, and each of them, caused the destruction of Plaintiff's remedy against each such "alternate entity"; each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and that each such defendant enjoys the goodwill originally attached to each "alternate entity."

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| AIR & LIQUID SYSTEMS CORPORATION | individually and as successor-in- interest to BUFFALO PUMPS, INC. |
| AIW-2010 WIND DOWN CORP. | individually and successor-in-interest to AMERICAN INSULATED WIRE CORPORATION |
| CBS CORPORATION, a Delaware corporation | a Delaware corporation, f/k/a VIACOM INC., successor by merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION |
| CLARK-RELIANCE CORPORATION | successor-in-interest to JERGUSON GAGE & VALVE COMPANY |
| DANIEL INTERNATIONAL CORPORATION | f/k/a DANIEL CONSTRUCTION COMPANY, INC. |
| FISHER CONTROLS INTERNATIONAL, LLC | wholly owned subsidiary of EMERSON ELECTRIC COMPANY |
| FLUOR CONSTRUCTORS INTERNATIONAL | f/k/a FLUOR CORPORATION |
| FMC CORPORATION | individually and as successor-in-interest to NORTHERN PUMPS |
| GOULDS PUMPS, INC. | d/b/a GOULDS PUMPS (IPG) LLC |
| IMO INDUSTRIES, INC. | Individually and as successor-in-interest to IMO DELAVAL |
| JERGUSON GAGE & VALVE COMPANY | d/b/a CLARK RELIANCE CORPORATION |
| McNALLY INDUSTRIES, LLC | successor-in-interest to NORTHERN FIRE APPARATUS |
| MARMON ENGINEERED WIRE & CABLE LLC | individually and as successor-in-interest to TE WIRE & CABLE LLC, f/k/a |

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

|  | THERMO-ELECTRIC WIRE & CABLE CO. |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY | A wholly-owned subsidiary of MetLife Inc. |
| NOKIA OF AMERICA CORPORATIO | individually and as successor-in-interest to ALCATEL-LUCENT USA INC., successor-in-interest to LUCENT TECHNOLOGIES INC.; successor in interest to WESTERN ELECTRIC COMPANY, INC. and successor in interest to BELL LABORATORIES, INC. |
| OCCIDENTAL CHEMICAL CORPORATION | f/k/a HOOKERS CHEMICAL CO., and as successor to DUEZ CORPORATION |
| ROCKWELL AUTOMATION INC. | individually and as successor-in-interest ALLEN-BRADLEY COMPANY LLC, f/k/a ROCKWELL INTERNATIONAL CORPORATION |
| SCHNEIDER ELECTRIC USA, INC. | f/k/a SQUARE D COMPANY |
| SOUTHWIRE COMPANY, LLC | individually and successor-in-interest to AMERICAN INSULATED WIRE CORPORATION |
| THERMO ELECTRIC COMPANY, INC. | f/k/a THERMO-ELECTRIC WIRE & CABLE CO. |
| TRANE US, INC. | f/k/a AMERICAN STANDARD COMPANIES, successor-in-interest to AMERICAN BLOWER COMPANY |
| WEIR VALVES & CONTROLS USA, INC. | f/k/a ATWOOD & MORRILL CO., INC. |

8.    Plaintiff has been informed and believes, and thereon alleges, that at all times herein mentioned, Defendants or their "alternate entities" were or are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of South Carolina, or the laws of some other state or foreign jurisdiction, and that said Defendants were and/or are authorized to do business in the State of South Carolina, and that said Defendants have regularly conducted business in the State of South Carolina.

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

9.     Plaintiff has been informed and believes, and thereon alleges, that progressive lung disease, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

10.     As a direct and proximate result of the conduct as alleged within, Plaintiff Paul E. Cruise has suffered permanent injuries, including, but not limited to, mesothelioma and other lung damage, as well as the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his damage in the sum of the amount as the trier of fact determines is proper.

11.     As a direct and proximate result of the conduct as hereinafter alleged, Plaintiff Paul E. Cruise incurred and is continuing to incur liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time.  Plaintiff requests leave to supplement this Court and all parties accordingly when the true and exact cost of Plaintiff's medical treatment is ascertained.

12.     As a further direct and proximate result of the conduct as hereinafter alleged, Plaintiff Paul E. Cruise has incurred, and will incur, loss of profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiff.  Plaintiff prays leave to supplement this Court and all parties accordingly to conform to proof at the time of trial.

8

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

## FOR A FIRST CAUSE OF ACTION
### (Product Liability: Negligence)

**Plaintiff Complains of Defendants for a Cause of Action for Negligence Alleging as Follows:**

13.    Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

14.    At all times herein mentioned, each of the named Defendants was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos, and products manufactured for foreseeable use with asbestos products.

15.    At all times herein mentioned, Defendants and/or their "alternate entities" singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, inadequately warned or failed to warn of the health hazards, failed to provide adequate use instructions for eliminating the health risks inherent in the use of the products, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, other products containing asbestos, and products manufactured for foreseeable use with asbestos products, in that said products caused personal injuries to Plaintiff and others similarly

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

situated, (hereinafter collectively called "exposed persons"), while being used for their intended purpose and in a manner that was reasonably foreseeable.

16.     The asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that there was an alternative for asbestos that could have been used as the product or as a component instead of asbestos within a normally asbestos-containing/utilizing product. Said alternatives would have prevented Defendants' asbestos and asbestos-containing products from causing Plaintiff's mesothelioma, due to an inability of any asbestos-alternative to penetrate the pleural lining of Plaintiff's lung, even if inhaled. Said alternatives came at a comparable cost to each of the Defendants and/or their "alternate entities." Said alternatives were of comparable utility to the asbestos or asbestos-containing products of Defendants and/or their "alternate entities." The gravity of the potential harm resulting from the use of Defendants' asbestos or asbestos-containing products, and the likelihood such harm would occur to users of its products, far outweighed any additional cost or marginal loss of functionality in creating and/or utilizing an alternative design, providing adequate warning of such potential harm, and/or providing adequate use instructions for eliminating the health risks inherent in the use of their products, thereby rendering the same defective, unsafe and dangerous for use by Plaintiff. Defendants and/or their "alternate entities" had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, each of them, breached said duty of due care.

17.     Defendants and/or their "alternate entities" knew or should have known, and intended that the aforementioned asbestos and asbestos-containing products would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

applications, including, but not limited to grinding sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling by exposed persons, including Plaintiff, would use or be in proximity to and exposed to said asbestos fibers.

18.     At all times relevant, Defendants and/or their "alternate entities" were aware of their asbestos and asbestos-containing products' defect but failed to adequately warn Plaintiff, Plaintiff's family members or others in their vicinity, as well as failed to adequately warn others of the known hazards associated with their products and/or failed to recall or retrofit their products. A reasonable manufacturer, distributor, or seller of Defendants' products would have, under the same or similar circumstances, adequately warned of the hazards associated with their products.

19.     Plaintiff's family members and others in their vicinity used, handled or were otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable.  Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in this Complaint.

20.     Plaintiff suffers from mesothelioma, a cancer related to exposure to asbestos and asbestos-containing products.  Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury or disease.

21.     Defendants' conduct and defective products as described in this cause of action were a direct cause of Plaintiff's injuries, and all damages thereby sustained by Plaintiff.  Plaintiff therefore seeks all compensatory damages in order to make him whole, according to proof.

22.     Furthermore, the conduct of Defendants and/or their "alternate entities" in continuing to market and sell products which they knew were dangerous to Plaintiff and the public

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

without adequate warnings or proper use instructions was done in a conscious disregard and indifference to the safety and health of Plaintiff and others similarly situated.

23.      In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, failing to recall or retrofit, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products or products manufactured for foreseeable use with asbestos products, Defendants and/or their "alternate entities" did so with conscious disregard for the safety of "exposed persons" who came in contact with asbestos and asbestos-containing products, in that Defendants and/or their "alternate entities" had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos, asbestos-containing products or products manufactured for foreseeable use with asbestos products, including, but not limited to, asbestosis, mesothelioma, lung cancer, and other lung damages. This knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of Defendants and/or their "alternate entities."

24.      Defendants and their "alternate entities" were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos, asbestos-containing products, or products manufactured for foreseeable use with asbestos products, could cause injury, and Defendants and their "alternate entities," each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products or products manufactured for foreseeable use with asbestos products, would

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

25.     The above-referenced conduct of Defendants and their "alternate entities," was motivated by the financial interest of Defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, instructing, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos, asbestos-containing products and products manufactured for foreseeable use with asbestos products. Defendants, their "alternate entities," and each of them consciously disregarded the safety of "exposed persons" in pursuit of profit. Defendants were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" without warning them of the potential hazards and further induced persons to work with and be exposed thereto, including Plaintiff.

26.     Plaintiff and other exposed persons did not know of the substantial danger of using Defendants' asbestos, asbestos containing-products, and products manufactured for foreseeable use with asbestos products.  The dangers inherent in the use of these products were not readily recognizable by Plaintiff or other exposed persons.  Defendants and/or their "alternate entities" further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

27.     Defendants and/or their "alternate entities" are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

28.     The herein-described conduct of Defendants and their "alternate entities," was and is willful, malicious, fraudulent, and outrageous and in conscious disregard and indifference to the safety and health of persons foreseeably exposed. Plaintiff, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

### FOR A SECOND CAUSE OF ACTION
**(Product Liability: Strict Liability- S.C. Code Ann. sec. 15-73-10, et seq.)**

**As a Second and Distinct Cause of Action for Strict Liability, Plaintiff Complains of Defendants, and Allege as Follows:**

29.     Plaintiff incorporates herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

30.     Plaintiff suffers from mesothelioma, a cancer related to exposure to asbestos, asbestos-containing products and products manufactured for foreseeable use with asbestos products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

31.     Defendants' conduct and defective products as described above were a direct cause of Plaintiff's injuries, and the injuries and damages thereby sustained by Plaintiff.

32.     Furthermore, the Defendants' conduct and that of their "alternate entities" in continuing to market and sell products which they knew were dangerous to Plaintiff and the public without adequate warnings or proper use instructions, was done in a conscious disregard and indifference to the safety and health of Plaintiff and others similarly situated.

33.     Defendants and/or their "alternate entities" knew or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to grinding, sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling, "exposed persons," including Plaintiff, would use or be in proximity to and exposed to said asbestos fibers.

34.    Plaintiff, Plaintiff's family members, and others in their vicinity used, handled or were otherwise exposed to asbestos, asbestos-containing products, and products manufactured for foreseeable use with asbestos products, referred to herein in a manner that was reasonably foreseeable.    Plaintiff's exposure to asbestos, asbestos-containing products, and products manufactured for foreseeable use with asbestos products occurred at various locations as set forth in this Complaint.

35.    Defendants and/or their "alternate entities" knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

36.    The asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that there was an alternative for asbestos that could have been used as the product or as a component instead of asbestos within a normally asbestos-containing/utilizing product. Said alternatives would have prevented Defendants' asbestos, asbestos-containing products, and products manufactured for foreseeable use with asbestos products from causing Plaintiff's mesothelioma, due to an inability of any asbestos-alternative to penetrate the pleural lining of Plaintiff's lung, even if inhaled.   Said alternatives came at a comparable cost to each of

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

the Defendants and/or their "alternate entities." Said alternatives were of comparable utility to the asbestos or asbestos-containing products or products manufactured for foreseeable use with asbestos products of Defendants and/or their "alternate entities." The gravity of the potential harm resulting from the use of Defendants' asbestos or asbestos-containing products, and the likelihood such harm would occur, far outweighed any additional cost or marginal loss of functionality in creating and/or utilizing an alternative design, providing adequate warning of such potential harm, and/or providing adequate use instructions for eliminating the health risks inherent in the use of their products, thereby rendering the same defective, unsafe and dangerous for use.

37.    The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products were intended to reach the ultimate consumer in the same condition as it left defendants. Said products did, in fact, cause personal injuries, including mesothelioma, asbestosis, other lung damage, and cancer to "exposed persons," including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

38.    Plaintiff and other exposed persons did not know of the substantial danger of using Defendants' asbestos, asbestos-containing products, or products manufactured for foreseeable use with asbestos products. The dangers inherent in the use of these products were not readily recognizable by Plaintiff or other exposed persons. Said Defendants and/or their "alternate entities" further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

39.    Defendants' defective products as described above were a direct cause of Plaintiff's injuries, and the damages thereby sustained.

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

40.     In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos, asbestos-containing products, and products manufactured for foreseeable use with asbestos products, Defendants, their "alternate entities," and each of them, did so with conscious disregard for the safety of Plaintiff and other exposed persons who came in contact with the asbestos, asbestos-containing products, and products manufactured for foreseeable use with asbestos products, in that Defendants and/or their "alternate entities" had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products or products manufactured for foreseeable use with asbestos products, including, but not limited to, mesothelioma, asbestosis, other lung damages and cancers. This knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of Defendants and/or their "alternate entities."

41.     Defendants and/or their "alternate entities" were aware that members of the general public and other exposed persons, who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products or products manufactured for foreseeable use with asbestos products could cause injury. Defendants and/or their "alternate entities" further knew that members of the general public and other exposed persons, who came in contact with asbestos, asbestos-containing products, and products manufactured for foreseeable use with asbestos products would assume, and in fact did assume, that exposure to asbestos and asbestos- containing products was safe, when in fact exposure was extremely hazardous to health and human life.

17

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

42.    The above-referenced conduct of Defendants and/or their "alternate entities" motivated by the financial interest of Defendants, their "alternate entities," and each of them, in the continuing and uninterrupted research, design, modification, manufacture, fabrication, labeling, instructing, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos, asbestos-containing products, and products manufactured for foreseeable use with asbestos products. Defendants and/or their "alternate entities" consciously disregarded the safety of "exposed persons" in their pursuit of profit and in fact consciously intended to cause injury to Plaintiff and other exposed persons and induced persons to work with, be exposed to, and thereby injured by asbestos, asbestos-containing products, and products manufactured for foreseeable use with asbestos products.

43.    Defendants are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and knew, or should have known of, the acts of each of their "alternate entities" as set forth herein.

44.    The conduct of said defendants, their "alternate entities," and each of them as set forth in this Complaint, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of exposed persons. Plaintiff, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

45.    At all times herein mentioned, each of the named Defendants was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities,"

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos and products manufactured for foreseeable use with asbestos products.

### FOR A THIRD CAUSE OF ACTION
**(Vicarious Liability of Defendants Based upon Respondeat Superior)**

**As a Third Distinct Cause of Action Against Defendants, Plaintiff Brings this Third Cause of Action for Vicarious Liability of Defendants Based upon Respondeat Superior and Allege as Follows:**

46.    Plaintiff incorporates by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

47.    Prior to and during all relevant times Defendants employed workers (hereinafter "employees") in areas where defendants owned, maintained, controlled, managed and/or conducted business activities where Plaintiff worked and/or spent time as alleged above.

48.    At all times herein mentioned, Defendants' employees frequently encountered asbestos-containing products, materials, and debris during the course and scope of their employment, and during their regular work activities negligently disturbed asbestos-containing materials to which Plaintiff was exposed.

49.    Employees handling and disturbing asbestos-containing products in Plaintiff's vicinity were the agents and employees of defendants and at all times relevant were subject to the control of Defendants with respect to their acts, labor, and work involving (a) the removal, transport, installation, cleaning, handling, and maintenance of asbestos-containing products, materials, and debris, and (b) the implementation of safety policies and procedures. Defendants

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

controlled both the means and manner of performance of the work of their employees as described herein.

50.    Employees handling and disturbing asbestos-containing products in Plaintiff's, Plaintiff's family members and others' vicinity received monetary compensation from Defendants in exchange for the work performed and these employees performed the work in the transaction and furtherance of Defendants' businesses.

51.    Harmful asbestos fibers were released during Defendants' employees' use, handling, breaking, or other manipulation of asbestos-containing products and materials.

52.    Once released, the asbestos fibers contaminated the clothes, shoes, skin, hair, and body parts of those exposed, including Plaintiff, who also inhaled those fibers, and on the surfaces of work areas, where further activity caused the fibers to once again be released into the air and inhaled by Plaintiff.

53.    The asbestos and asbestos-containing materials were unsafe in that handling and disturbing products containing asbestos causes the release of asbestos fibers into the air onto surrounding surfaces, and onto persons in the area.  The inhalation of asbestos fibers can cause serious disease and death.

54.    Defendants' employees' use, handling and manipulation of asbestos-containing materials, as required by their employment and occurring during the course and scope of their employment, did in fact, cause personal injuries, including mesothelioma and other lung damage, to exposed persons including Plaintiff.

55.    Defendants' employees were negligent in their use, handling and manipulation of said products in that they failed to isolate their work with asbestos and/or to suppress asbestos fibers from being released into the air and surrounding areas. They also failed to take appropriate

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

steps to learn how to prevent exposure to asbestos, failed to warn and/or adequately warn Plaintiff that he was being exposed to asbestos, failed to adequately warn Plaintiff of the harm associated with his exposure to asbestos, and provide him with protection to prevent his inhalation of asbestos.

56.    Defendants' employees knew or should have known that failure to take such steps would result in exposure to bystanders including Plaintiff.

57.    Defendants' employees owed Plaintiff a duty to exercise due care and diligence in their activities while he was lawfully on the premises so as not to cause him harm.

58.    Defendants' employees breached this duty of care as described above.

59.    At all times mentioned, Plaintiff was unaware of the dangerous condition and unreasonable risk of personal injury created by Defendants' employees' use of and work with asbestos-containing products and materials.

60.    As a direct result of the Defendants' employees conduct, Plaintiff's exposure to asbestos, asbestos-containing materials, and products manufactured for foreseeable use with asbestos products, each individually and together, caused severe and permanent injury to Plaintiff and the damages and injuries as complained of herein by Plaintiff.

61.    The risks herein alleged and the resultant damages suffered by the Plaintiff were typical of or broadly incidental to Defendants' business enterprises. As a practical matter, the losses caused by the torts of Defendants' employees as alleged were sure to occur in the conduct of Defendants' business enterprises. Nonetheless, Defendants engaged in, and sought to profit by, their business enterprises without exercising due care as described in this Complaint, which, on the basis of past experience, involved harm to others as shown through the torts of employees.

21

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

62.     Based on the foregoing, Defendants as the employers of said employees are vicariously liable under the doctrine of *respondeat superior* for all negligent acts and omissions committed by their employees in the course and scope of their work that caused harm to Plaintiff.

### FOR A FOURTH CAUSE OF ACTION
**(Premises Liability: Negligence as to Premise Owner/Contractor)**

**As a Fourth Distinct Cause of Action for General Negligence, Plaintiff Complains of Defendants, and Allege as Follows:**

63.     Plaintiff incorporates herein by reference, as though fully set forth, each and every paragraph of the General Allegations above.

64.     Prior to and during all relevant times, Defendants employed workers in areas where Defendants owned, maintained, controlled, managed and/or conducted business activities where Plaintiff worked and/or spent time.

65.     At all times herein mentioned, Defendants selected, supplied, and distributed asbestos-containing materials to their employees for use during their regular work activities, and said employees disturbed those asbestos-containing materials.

66.     Defendants were negligent in selecting, supplying, distributing and disturbing the asbestos-containing products and in that said products were unsafe. Said products were unsafe because they released asbestos fibers and dust into air when used which would be inhaled by Plaintiff and settled onto Plaintiff's clothes, shoes, hands, face, hair, skin, and other body parts thus creating a situation whereby workers and by-standers including Plaintiff would be exposed to dangerous asbestos dust beyond the present.

67.     The asbestos, asbestos-containing materials, and products manufactured for foreseeable use with asbestos products described herein were unsafe in that handling and disturbing products containing asbestos causes the release of asbestos fibers into the air, and the inhalation of asbestos fibers causes serious disease and death. Here, the handling of the above-

22

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

described asbestos-containing materials by Defendants' employees, as required by their employment and occurring during the course and scope of their employment, did, in fact, cause personal injuries, including mesothelioma and other lung damage, to exposed persons, including Plaintiff.

68.    At all times herein mentioned, Defendants knew or should have known that its employees and bystanders thereto, including Plaintiff, frequently encountered asbestos-containing products and materials during the course and scope of their work activities.

69.    At all times herein mentioned, Defendants knew or should have known that the asbestos-containing materials encountered by its employees and bystanders thereto including Plaintiff, were unsafe in that harmful asbestos fibers were released during the use, handling, breaking, or other manipulation of asbestos-containing products and materials, and that once released, asbestos fibers can be inhaled, and can alight on the clothes, shoes, skin, hair, and body parts of those exposed, where further activity causes the fibers to once again be released into the air where they can be inhaled, all of which causes serious disease and/or death.

70.    At all times herein mentioned, Defendants, in the exercise of reasonable diligence, should have known that absent adequate training and supervision, their employees and bystanders thereto including Plaintiff were neither qualified nor able to identify asbestos-containing products nor to identify the hazardous nature of their work activities involving asbestos-containing products.

71.    At all times herein mentioned, Plaintiff was unaware of the dangerous condition and unreasonable risk of personal injury created by the presence and use of asbestos-containing products and materials.

72.    At all times herein mentioned, Defendants, in the exercise of reasonable diligence, should have known that workers and bystanders thereto, would bring dangerous dust home from

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

the workplace and contaminate their family cars and homes, continuously exposing and potentially causing injury to others off the premises.

73.    At all times herein mentioned, Defendants had a duty to use due care in the selection, supply, distribution and disturbance of asbestos-containing products and materials to its employees, to adequately instruct, train, and supervise their employees and to implement adequate safety policies and procedures to protect workers and persons encountering those workers, including Plaintiff, from suffering injury or death as a result of the asbestos hazards encountered and created by the work of Defendants' employees.

74.    Defendants' duties as alleged herein exist and existed independently of Defendants' duties to maintain their premises in reasonably safe condition, free from concealed hazards.

75.    Defendants negligently selected, supplied, and distributed the asbestos-containing materials and failed to adequately train or supervise their employees to identify asbestos-containing products and materials; to ensure the safe handling of asbestos-containing products and materials encountered during the course of their work activities; and to guard against inhalation of asbestos fibers and against the inhalation of asbestos fibers by those who would come into close contact with them after they had used, disturbed, or handled, said asbestos-containing products and materials during the course and scope of their employment by defendants.

76.    Defendants failed to warn its employees and bystanders thereto, including Plaintiff, of the known hazards associated with asbestos and the asbestos-containing materials they were using and/or disturbing.

77.    As a direct and proximate result of the conduct of Defendants in selecting, supplying, distributing and disturbing asbestos-containing materials or products manufactured for

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

foreseeable use with asbestos products and failing to adequately train and supervise their employees and failing to adopt and implement adequate safety policies and procedures as alleged herein, Plaintiff became exposed to and inhaled asbestos fibers, which was a substantial factor in causing Plaintiff to develop asbestos-related mesothelioma, and to suffer all damages attendant thereto.

### FOR A FIFTH CAUSE OF ACTION
**(Negligence due to voluntary assumption of duty by AT&T Corp.)**

**As a Fifth Distinct Cause Of Action for Negligence due to AT&T Corp.'s voluntary assumption of duty, Plaintiff Complains of Defendant AT&T Corp. and Alleges as Follows:**

78.     Plaintiff repeats the general allegations, as well as allegations of the First, Second, Third and Fourth Causes of Action where relevant.

79.     At various times throughout his career, Plaintiff was exposed to asbestos from asbestos-containing products manufactured by Western Electric Company, including but not limited to wiring and cables.

80.     Plaintiff worked with asbestos containing products manufactured by Western Electric Company, Inc. for whom AT&T Corp. gratuitously undertook to provide with comprehensive safety information regarding the hazards of asbestos in Western Electric's products.

81.     Furthermore, AT&T Corp., gratuitously provided Western Electric with specifications, policies and procedures for manufacturing asbestos-containing products. AT&T Corp. further gratuitously provided Western Electric with specifications for when and how

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

asbestos would be removed from the products manufactured by Western Electric, including but not limited to wiring and cable.

82.    In providing this information to Western Electric, AT&T Corp. did not act in a managerial or policymaking capacity for Western Electric. At all times, AT&T Corp. maintained the corporate formalities and separate corporate identities of itself and Western Electric.

83.    Alternatively, AT&T Corp. dominated and controlled Western Electric. AT&T Corp. knowingly and intentionally disregarded its specific and longstanding knowledge of the hazards of asbestos and the dangers faced by users of Western Electric asbestos-containing products for its pecuniary gain.

84.    While engaging in the conduct described above, AT&T Corp. knew, based on prior reports of individuals contracting cancer from working with and around asbestos-containing products and based on explicit warnings specifically identifying cancer from exposure to asbestos dust created by asbestos containing products, that it was virtually certain to result in injury or death of users of Western Electric's asbestos containing products like Plaintiff Paul Cruise.

## FOR A SIXTH CAUSE OF ACTION
**(Product Liability: Breach of Implied Warranties- S.C. Code Ann. 36-2-314)**

**As a Sixth Distinct Cause Of Action for Breach of Implied Warranties, Plaintiff Complains of Defendants and Alleges as Follows:**

85.    Plaintiff repeats the general allegations, as well as allegations of the First and Second, of Action where relevant.

86.    Each of the Defendants impliedly warranted that their asbestos materials or asbestos-containing products were of good and merchantable quality and fit for their intended use.

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

87.     The implied warranty made by the Defendants that the asbestos and asbestos-containing products were of good and merchantable quality and fit for the particular intended use, was breached. As a result of that breach, asbestos was given off into the atmosphere where Plaintiff Paul E. Cruise carried out his duties and was inhaled by Plaintiff.

88.     As a direct and proximate result of the breach of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff Paul E. Cruise was exposed to Defendants' asbestos, asbestos-containing products, and/or products manufactured for foreseeable use with asbestos products and consequently developed mesothelioma, causing Plaintiff to suffer all damages attendant thereto.

## FOR A SEVENTH CAUSE OF ACTION
### (Fraudulent Misrepresentation)

**For a Sixth Distinct Cause of Action for Fraudulent Misrepresentation, Plaintiff Complains of Defendants, and Allege as Follows:**

89.     Plaintiff repeats and re-alleges the portions of the above paragraphs where relevant.

90.     That during, before and after Plaintiff Paul E. Cruise's exposure to asbestos products manufactured by Defendants, the Defendants falsely represented facts, including the dangers of asbestos exposure to Plaintiff in the particulars alleged in the paragraphs above, while Defendants each had actual knowledge of said dangers of asbestos exposure to persons such as Plaintiff Paul E. Cruise. At the same time of these misrepresentations, Defendants each knew of the falsity of their representations and/or made the representations in reckless disregard of their truth or falsity.

91.     The foregoing representations were material conditions precedent to Plaintiff Paul E. Cruise's continued exposure to asbestos-containing products. Defendants each intended that Plaintiff act upon the representations by continuing his work around, and thereby exposure to,

27

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

the asbestos products. Plaintiff was ignorant of the falsity of Defendants' representations and rightfully relied upon the representations.

92.    As a direct and proximate result of Plaintiff Paul E. Cruise's reliance upon Defendants' false representations, Plaintiff has suffered injury and damages as described herein.

## FOR AN EIGHTH CAUSE OF ACTION
### (Conspiracy, Concert of Action- Defendant Metropolitan Life Insurance Company)

93.    Plaintiff repeats and re-alleges the portions of the above paragraphs where relevant.

94.    Beginning in the late 1920's, conspirators including Defendant Metropolitan Life Insurance Company ("Met Life"), as well as Johns-Manville, Raybestos-Manhattan and others, undertook a duty to conduct research on asbestos-related health problems and to inform the public about any health risks that could be associated therewith. In or about 1929, Met Life, through its agents and employees acting within the scope of their agency and employment, including but not limited to Dr. Anthony J. Lanza ("Lanza"), began an investigation of asbestos-related health hazards. In 1935, this study was altered by Lanza, with the full knowledge of Met Life, at the request of and in concert with the asbestos industry in order to wrongly influence the United States Public Health Service, the United States medical community and various state legislatures.

95.    Thereafter, Defendant Met Life through the acts and omissions of its employees, most notably Lanza, undertook a series of activities with various members of the asbestos industry including but not limited to Johns-Manville, Raybestos-Manhattan/ Raymark Industries, Inc., United States Gypsum, American Brake Blok/Abex, and others to suppress and misrepresent the dangers of exposure to asbestos dust to employees of Met Life's insureds and the general public and the medical community.

96.    The conspirators through their agent, Lanza of Met Life, made a concerted effort to discredit and to terminate the experiments of certain scientists who were developing data of

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

profound importance for the area of public health in relation to the cancer hazard which existed for workers and bystanders in the asbestos industry.

97.     As a direct and proximate result of Met Life's intentional publication of deceptive and misleading medical data and information, and other conspiratorial acts and omissions, Defendant caused asbestos to be used in the occupational settings from which Plaintiff breathed asbestos dust which resulted in Plaintiff's injuries. Defendant Met Life, through its agents and employees and officers, aided and abetted and gave substantial assistance to Johns-Manville and Raybestos-Manhattan in their tortious selling of asbestos products and voluntarily undertook a duty to warn the United States Public Health Service, the medical community, and others about the danger of asbestos and consciously and negligently misrepresented the dangers of asbestos to the United States Public Health Service, the medical community, and others, all to the ultimate harm of Plaintiff herein.

98.     Defendant Met Life rendered substantial aid and assistance to the manufacturers of asbestos-containing products to which Plaintiff was exposed, and such assistance by Met Life aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products by such manufacturers which proximately caused Plaintiff's illness.

99.     In both conducting tests and in publishing their alleged results, Met Life failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

effects of asbestos. Met Life also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

100.    Plaintiff unwittingly and justifiably relied upon the thoroughness of Met Life's tests and information dissemination, the results of which Met Life published in leading medical journals.

101.    As a direct and proximate contributing result of Met Life's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff from asbestos exposure was increased, and (ii) Plaintiff suffered the injuries described herein.

102.    In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Met Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Plaintiff.

103.    Additionally and alternatively, as a direct and proximate result of Met Life's actions and omissions, Plaintiff was caused to remain ignorant of all the dangers of asbestos resulting in Plaintiff's wife, his co-workers, his family, and the general public to be unaware of the true and full dangers of asbestos, depriving Plaintiff of the opportunity to decide for himself whether he

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

wanted to take the risk of being exposed to asbestos, denied Plaintiff the opportunity to take precautions against the dangers of asbestos and proximately caused Plaintiff's damages herein.

104.    During the relevant time period the Plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos or asbestos-containing products which were mined, milled, manufactured, fabricated, supplied, and/or sold by the Johns Manville and/or Raybestos/Raymark.

105.    Defendant, Met Life, together with Manville, Raymark and other persons and entities, known and unknown at times relevant hereto, engages in a conspiracy or concert of action to inflict injury on the Plaintiff, and to withhold, alter, suppress and misrepresent information about the health effects of asbestos exposure.  One or more of said conspirators did cause tortious injury to the Plaintiff or his wife in the course of or as a consequence of the conspiracy of concert of action.  At least the following enumerated acts were undertaken by the conspirators in the course of and in furtherance of the conspiracy or concert of action:

(a)    In 1932, Met Life, through Lanza and others, assisted Manville with medical examinations of over 1,000 employees of Manville's factory in Manville, New Jersey.  The report of this study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process.  This 1932 medical survey was not published in the medical literature and, therefore, was unavailable to scientists studying the issue of asbestos-related disease.  Further collaboration between Manville and Met Life continued the cover-up.

(b)    Beginning in approximately 1934, Manville, through its agents, Vandiver Brown and Attorney J.C. Hobart, suggested to Lanza, Associate Director of Met Life, which was then insurer of Manville and Raymark, that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts about the health consequences of asbestos exposure.  This was accomplished through intentional deletion of Lanza's description of asbestosis as 'fatal' and through other selective editing that affirmatively misrepresent asbestosis as a disease process less serious than it actually is and was known to be.  As a result, Lanza's study was published in the medical literature in 1935.  The conspirators were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville,

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

Raymark, and Met Life.as insurer.  Furthermore, upon information and belief, it is alleged that Met Life, at all times relevant hereto, had substantial monetary investments in Manville and Raymark, among other asbestos product manufacturers and distributors.

(c)     In 1936, the conspirators or some of them entered into an agreement with the Saranac Laboratories.  Under this agreement, these conspirators acquired the power to decide what information Saranac could publish about asbestos disease and to control in what form such publications would occur.  This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to material facts included in any study.  On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

(d)     By November 1948, or earlier, Manville, Met Life (acting through Lanza), Raymark, and others decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936.  Dr. Gardner's research involved carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos products.

(e)     At a meeting on November 11, 1948, these conspirators and others intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensities of asbestos and the health effects of asbestos on humans and they determined that only an edited version would be published.  These conspirators thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and to the class of persons exposed to asbestos, including the Plaintiff.

(f)     As a direct result of influence exerted by the above described conspirators, Dr. Arthur Vorwald published Dr. Gardner's edited work in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health in 1951 in a form that stressed those portions of Dr. Gardner's work that the conspirators wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of the risks.  The conspirators affirmatively and deliberately disseminated this misleading Vorwald publication to universities, libraries, government officials, agencies and others.

(g)     Such action constituted a material affirmative misrepresentation of the material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was a less serious health concern than Dr. Gardner's unedited work indicated.

(h)     For many decades, Met Life, individually, jointly and in conspiracy with Manville and Raymark, have been in possession of medical and scientific data, literature, and

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly.

(i)     Despite the medical and scientific data, literature and test reports possessed by and available to Met Life, individually and in conspiracy with Manville and Raymark, Fraudulently, willfully and maliciously withheld, concealed and suppressed said medical and scientific data, literature and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who using and being exposed to Manville or Raymark asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products; caused to be released, published and   disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases, which Metropolitan, Manville and Raymark knew were either incorrect, incomplete, outdated and misleading; distorted the results of medical examinations conducted upon workers who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating and/or concealing the nature and extent of the harm which workers suffered; and failed to adequately warn the Plaintiff of the dangers to which he was exposed when they knew of the dangers.

(j)     By the false and fraudulent representations, omissions, failures, and concealments set forth above, Met Life, Manville and Raymark, individually, jointly, and in conspiracy with each other, intended to induce the Plaintiff to rely upon said false and fraudulent representations, omissions, failures, and concealments, to continue to expose themselves to the dangers inherent in the use of and exposure to their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Said misrepresentations were false, incomplete, and misleading and constitute negligent misrepresentations as defined by Sections 311 and 522 of the Restatement (Second) of Torts.

106.    Plaintiff reasonably and in good faith relied upon the false and fraudulent representations, omissions, failures, and concealments made by Met Life, Manville, and Raymark regarding the nature of their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

107.    As a direct and proximate result of the conspiracy and concert of action between Met Life, Manville and Raymark, the Plaintiff has been deprived of the opportunity of informed

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

free choice and connection with the use of and exposure to Manville and Raymark's asbestos and asbestos-containing products, and therefore continued to work with and be exposed to the co-conspirator corporation's asbestos and asbestos-containing products and as a result brought home on his clothes, hair, shoes, and in his case asbestos dust or fibers contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the Plaintiff has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment, joint and several, against Defendants and/or their "alternate entities" in an amount to be proved at trial, as follows:

1.     For Plaintiff's actual damages according to proof, including Plaintiff's pain & suffering, as well as medical bills;

2.     For loss of earnings according to proof;

3.     For loss of care, comfort and society;

4.     For punitive damages according to proof;

5.     For Plaintiff's cost of suit herein;

6.     For damages for fraudulent misrepresentation according to proof; and

7.     For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided by South Carolina law.

Respectfully submitted,

**DEAN OMAR BRANHAM, LLP**

By: /s/ *Jonathan M. Holder*
Jonathan M. Holder- (SC Bar No. 77935)
Jessica M. Dean- (TX Bar No. 24040777)
To be admitted *pro hac vice*
Charles W. Branham, III, (TX Bar No. 24012323)
Admitted *pro hac vice*

ELECTRONICALLY FILED - 2018 May 25 5:14 PM - RICHLAND - COMMON PLEAS - CASE#2018CP4002849

302 N. Market Street, Ste. 300
Dallas, Texas 75202

Theile B. McVey
**KASSEL & McVEY Attorneys at Law**
1330 Laurel Street
Post Office Box 1476
Columbia, South Carolina 29202

**ATTORNEYS FOR PLAINTIFF**

May 25, 2018
Dallas, Texas