IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| MARY ANN ROBERTSON, Individually and as Executrix of the Estate of PAUL E. CRUISE,<br><br>Plaintiff,<br><br>v.<br><br><br>AIR & LIQUID SYSTEMS CORP., et al.,<br><br>Defendants, | Case No.: 3:18-cv-01842-SAL<br><br><br><br><br>**OPINION AND ORDER ON COVIL CORPORATION'S MOTION FOR SUMMARY JUDGMENT** |

 Before the court is a Motion for Summary Judgment filed by Defendant Covil Corporation ("Covil") as to all claims asserted by Plaintiff Mary Ann Robertson, individually and as executrix of the estate of Paul Cruise. [ECF No. 386]. Plaintiff alleges that her deceased father, Paul Cruise, was exposed to asbestos-containing products while working as a boiler tender for the United States Navy and as an electrician at various industrial facilities from 1965 to around 1980. The claims against Covil Corporation relate to Cruise's work as an electrician at various industrial facilities.

 Covil moves the court to grant summary judgment because it contends that Plaintiff cannot show evidence of exposure to a Covil product sufficient to create a genuine dispute of material fact. [ECF No. 386-1]. The Plaintiff responded, ECF No. 426, and Covil replied to the response, ECF No. 513. The motion is ripe for ruling. For the reasons outlined, the court finds that Plaintiff has not set forth specific facts showing that there is a genuine issue for trial, and Covil is entitled to judgment as a matter of law on all claims.

1

**FACTUAL BACKGROUND**

Plaintiff Mary Ann Robertson alleges that her deceased father, Paul Cruise, was exposed to asbestos-containing products while working as a boiler tender for the United States Navy from 1961 to 1965. [ECF No. 386-3 p.5-6]. Plaintiff also alleges that Cruise was exposed to asbestos-containing projects as an electrician at various industrial facilities from 1965 until around 1980. *Id*. at 6-7. The allegations against Defendant Covil arise from the latter category of Cruise's work history: his work as an electrician at various industrial facilities. *Id.* at 7.

Paul Cruise passed away from malignant mesothelioma on July 17, 2018. [ECF No. 426-1]. He died before he could give a deposition in this case. [ECF No. 426 p.1]. However, his friend and brother-in-law, Ray Watson, testified about Cruise's work history. [ECF No. 426-2]. Watson recalled working in facilities where Covil was a contractor using insulating materials. *Id.* at 104:22-105:8. Watson stated that he and Cruise worked around Covil contractors on several jobs. *Id.* at 106:13-23. He also testified that he and Cruise worked around Covil insulation contractors when they were removing and installing insulation. *Id.* at 107:13-16. He stated that the insulation removal created a lot of dust that he and Cruise breathed. *Id.* at 108:5-18.

However, Watson also admitted that he could not recall seeing Covil-supplied products or Covil workers at any specific jobsites where he and Cruise worked. *Id.* at 259:21-24. Nor could he identify a specific timeframe when he saw Covil-supplied products or Covil workers on a jobsite with Cruise. *Id.* at 259:25-260:4). Watson also did not know any types of products that Covil distributed, and he could not say which Covil-supplied products would have been at any one jobsite. *Id*. at 260:15-20.

Covil produced a list of "Tax Exempt Jobs" in discovery. [ECF No. 426-3]. This list provides the names of companies with which Covil did business. *Id.* Each name has a corresponding

number that appears to designate a project or jobsite. *Id.* In some entries, the word "ALL" is present in place of a number. *Id.* Some of the companies in the Tax Exempt Jobs list are the same companies that Watson identified in his deposition as places where he and Cruise worked. *Id.*; [ECF No. 426-2, 75:20-78:14].

Daniel International produced what appears to be a price quotation or bid that Daniel submitted for a J.P. Stevens plant in Wallace, North Carolina. [ECF No. 426-5]. Watson testified that he worked with Cruise in Wallace, North Carolina. [ECF No. 426-2, 76:4-5]. The document contains reference to Covil insulation and steam piping in an equipment room that Covil admits could have contained asbestos. [ECF No. 513-4].

## LEGAL STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## CHOICE OF LAW

The first choice of law issue is whether state law or Maritime law applies.  Maritime law may apply to Plaintiff's claims that Cruise was exposed to asbestos while on board a ship, but state law applies to Plaintiff's claims that Cruise was exposed to asbestos on land.  *Connor v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 458-59; *Andrews v. A W Chesterton Co.*, No. 2:13-CV-2055-RMG, 2015 WL 12831323, at *3 (D.S.C. May 29, 2015) (Gergel, J.) (following the *Connor* opinion); *Haskins v. 3M Co.*, No. 2:15-CV-02086-DCN, 2017 WL 3118017, at *6 (D.S.C. July 21, 2017) (Norton, J.) (same).  Here, Plainitff's claims with respect to Covil relate to alleged exposure at industrial jobsites on land.  [ECF No. 165 p.29].  Therefore, state law applies to all claims before the court on this motion.

The second choice of law issue is which state's law applies.  As the forum state, South Carolina's choice of law rules govern choice of law questions.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  In a wrongful death action, South Carolina courts apply the substantive law of the state where the injury resulting in death occurred.  *Anderson v. Lane*, 97 F. Supp. 265, 267 (E.D.S.C. 1951).

Plaintiff alleges potential exposure at a number of facilities throughout the southeastern United States. [ECF No. 386-3 p.6-7]. Specifically, Plaintiff alleges exposure to asbestos-containing Covil products at facilities in South Carolina, North Carolina, Georgia, Tennessee, and Virginia. *Id*. Plaintiff alleges that each of these exposures was a substantial cause of Cruise's mesothelioma and death. [ECF No. 426 p.3]. This presents a problem under South Carolina's *lex loci delecti* choice of law rule: the place of injury is open to debate because mesothelioma results from repeated exposure to asbestos-based products over a period of several years. *See Hardy v. Johns-Manville Sales Corp.*, 509 F. Supp. 1353 (E.D. Tex. 1981) ("[the disease's] latent period makes it legally and medically impossible to state with certainty . . . which exposure to asbestos caused or contributed to the disease.").

Fortunately, the law in each state where exposure is alleged is essentially the same regarding a determination of whether exposure is actionable. South Carolina, North Carolina, Virginia, and Tennessee use the "frequency, regularity, and proximity" test set forth in *Lohrmann v. Pittsburgh Corning Corporation*. *Henderson v. Allied Signal, Inc.*, 373 S.C. 179, 644 S.E.2d 724 (2007) (adopting the *Lohrmann* test for actionable exposure in South Carolina); *Jones v. Owens-Corning Fiberglass Corp.*, 69 F.3d 712, 716 (4th Cir. 1995) (applying the *Lohrmann* test in a case under North Carolina law); *Wilson v. AC&S, Inc.*, No. 4:14CV91, 2015 WL 7313391, at *3 (E.D. Va. Nov. 19, 2015), *aff'd sub nom. Wilson v. CBS CORPORATION*, 670 F. App'x 771 (4th Cir. 2016) (stating that under the *Lohrmann* standard and Virginia law, "plaintiff faces the same set of hurdles . . ."); *Boyd v. Celotex Corp.*, 951 F.2d 348 (6th Cir. 1991) (applying the *Lohrmann* standard in a case under Tennessee law). Georgia uses a similar standard for actionable exposure. *See Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1486 (11th Cir. 1985) (stating that recovery requires the plaintiff to show that he was exposed to defendant's asbestos-containing

product by working with or in close proximity to the product). Accordingly, Plaintiff must show "actionable exposure" under the standard set forth in *Lohrmann* that was adopted by the Supreme Court of South Carolina in *Henderson*.

## DISCUSSION

**I. Plaintiff Fails to Show Actionable Exposure.**

In order to survive summary judgment, Plaintiff must put forward evidence of "actionable exposure." *Henderson*, 373 S.C. at 185, 644 S.E.2d at 727. "Actionable exposure" is a shorthand for the showing required to raise a jury question on causation in an asbestos case. *See Lohrmann*, 782 F.2d 1156, 1162–63 (4th Cir. 1986). To support a reasonable inference of substantial causation from circumstantial evidence, Plaintiff must provide evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked. *Id.* This is known as the "frequency, regularity, and proximity test." *Henderson*, 373 S.C. at 185, 644 S.E.2d at 727 (citing *Lohrmann* at 1162).

In *Pace v. Air & Liquid Systems Corp.*, the United States Court of Appeals for the Fourth Circuit upheld the District Court's grant of summary judgment because there was no evidence that specifically connected the plaintiff to the defendant's asbestos-containing pumps. 642 F. App'x 244, 248 (4th Cir. 2016). In *Pace*, the plaintiff introduced evidence showing that he worked at a shipyard assembling pumps, and that some of the pumps in the shipyard contained asbestos. *Id.* The plaintiff also introduced testimony from a co-worker claiming that the plaintiff worked on defendant's pumps in particular. *Id.* The court held that, when read in context, it was clear the co-worker's conclusion was based on speculation. *Id.* at 249. The court went on to note that, even if it could be inferred from this testimony that the plaintiff worked on defendant's pumps regularly, the plaintiff did not show that the pumps contained asbestos. *Id.* Accordingly, the court held that

6

the plaintiff failed to provide evidence supporting a reasonable inference that defendant's products were a substantial cause of the plaintiff's mesothelioma. *Id.* Speculative co-worker testimony paired with evidence that certain pumps in the plaintiff's workplace contained asbestos was not enough to satisfy the "frequency, regularity, and proximity" test. *Id.*

Here, the same reasoning is controlling. Defendant argues that discovery has revealed no evidence that Cruise was exposed to asbestos from any product supplied, installed, or manipulated by Covil. [ECF No. 386-1]. In response, Plaintiff points to a Covil list of "Tax Exempt Jobs." [ECF No. 426-3]. This list identifies companies with which Covil did business. *Id.* However, the list does not indicate what Covil was doing at any given job site. *Id.* Therefore, it does not, alone, show that any material Covil provided to these job sites contained asbestos.

Plaintiff also points to a document produced by Daniel International Corporation that appears to be a price quotation submitted by Daniel to a J.P. Stevens plaint in Wallace, North Carolina. [ECF No. 426-5]. The document includes reference to steam piping that, Covil admits, could have contained asbestos. *Id*; [ECF No. 513 p.4]. However, the document does not show that J.P. Stevens accepted the quotation or reduced the quotation to a contract. [ECF No. 426-5]. The document, alone, does not show that Covil performed work at the facility.

Plaintiff attempts to fill in these gaps with the deposition testimony of Ray Watson. [ECF No. 426-2]. Watson testified that he and Cruise worked around Covil insulation contractors when they were removing and installing insulation. *Id.* at 107:13-16. Watson also testified that he and Cruise worked at jobsites for companies that appear on Covil's "Tax Exempt Jobs" list. *Id.* at 75:20-78:14. He also testified that he and Cruise worked at the Wallace, North Carolina plant. *Id.* However, Watson also testified that he could not recall (1) any specific jobsites where he and Cruise worked around Covil products or Covil workers, (2) any specific timeframe when he and

Cruise worked around Covil products or Covil workers, or (3) any types of products that Covil distributed. *Id.* at 259:21-260:19.

Like the plaintiff in *Pace*, the Plaintiff in this case presents evidence that falls short of placing the Plaintiff in proximity to the Defendant's specific product and attempts to bridge this gap with speculative deposition testimony. The documents upon which Plaintiff relies do not place Plaintiff in proximity to a specific asbestos-containing product distributed by Covil on a regular basis over an extended period of time. The testimony of Mr. Watson is too speculative to cure this defect. Even if Mr. Watson's testimony supported an inference that he and Mr. Cruise worked at jobsites where Covil was installing and removing insulation, the evidence does not place Cruise in close proximity to a specific Covil product that contained asbestos. Accordingly, Plaintiff cannot satisfy the "frequency, regularity, and proximity test" to show actionable exposure.

## CONCLUSION

Plaintiff has not provided evidence of exposure to support a reasonable inference of substantial causation from circumstantial evidence. Accordingly, Covil is entitled to judgment as a matter of law, and its motion for summary judgment is GRANTED.

IT IS SO ORDERED.

October 26, 2020
Florence, South Carolina

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge