IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| MARY ANN ROBERTSON, Individually and as Executrix of the Estate of PAUL E. CRUISE,<br><br>Plaintiff,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORP., et al.,<br><br>Defendants, | Case No.: 3:18-cv-01842-SAL<br><br><br><br>**OPINION AND ORDER ON EATON CORPORATION'S MOTION FOR SUMMARY JUDGMENT** |

Before the court is a Motion for Summary Judgment filed by Defendant Eaton Corporation ("Eaton") as to all claims asserted by Plaintiff Mary Ann Robertson, individually and as executrix of the estate of Paul Cruise. [ECF No. 384]. Plaintiff alleges that her deceased father, Paul Cruise, was exposed to asbestos-containing products while working as a boiler tender for the United States Navy and as an electrician at various industrial facilities from 1965 to around 1980. The claims against Eaton Corporation relate to Cruise's work as an electrician at various industrial facilities.

Eaton moves the Court to grant summary judgment because it contends that Plaintiff cannot show evidence of exposure to an Eaton product that creates a causal link between Eaton and Cruise's injuries. [ECF No. 384-1]. Therefore, Eaton argues, Plaintiff's claims against Eaton fail to raise a genuine dispute of material fact. *Id.* The Plaintiff responded. [ECF No. 439]. In the response, Plaintiff states that she does not oppose Eaton's motion for summary judgment on the claims of fraudulent misrepresentation and breach of implied warranty. *Id.* at p.9 n.3.

1

Accordingly, Eaton's motion for summary judgment is GRANTED unopposed on the claims of fraudulent misrepresentation and breach of implied warranty. Eaton replied to the response, ECF No. 514. Therefore, the motion is ripe for ruling. For the reasons outlined below, Eaton's motion for summary judgment is GRANTED on all claims.

## FACTUAL BACKGROUND

Plaintiff Mary Ann Robertson alleges that her deceased father, Paul Cruise, was exposed to asbestos-containing products while working as a boiler tender for the United States Navy from 1961 to 1965. *See* [ECF No. 386-3 pp.5-6]. Plaintiff also alleges that Cruise was exposed to asbestos-containing projects as an electrician at various industrial facilities for a period of about 13 years following Cruise's service in the Navy. [ECF No. 439 p.2]. The allegations against Defendant Eaton arise from the latter category of Cruise's work history: his work as an electrician at various industrial facilities. *Id.* Specifically, the allegations arise from Watson's alleged work with Defendant's contactors and motor starters. *Id.*

Paul Cruise passed away from malignant mesothelioma on July 17, 2018. *Id.* He died before he could give a deposition in this case. *Id*. However, his friend and brother-in-law, Ray Watson, testified about Cruise's work history. [ECF No. 439-2]. Watson discussed Cruise's work with products identified as contactors and motor starters. *Id.* at 97:6-98:23. Contactors and motor starters are often housed in floor-standing electrical structures known as "motor control centers." *Id.* at 266:18-268:10. Each motor control center can house several dozen motor starters. *Id.* Watson testified that Cruise was often tasked with cleaning, inspecting, and replacing parts of the contactors and motor starters. *Id*. at 97:9-20.

Watson described the work Cruise did on the motor starters. *Id.* at 100:13-101:7. Cruise would clean the arc shields of the motors starters with an abrasive crocus cloth. *Id.* This process created

2

dust. *Id.* Some of the dust released into the air which Cruise would breathe. *Id.* The residue dust would fall to the equipment, and Cruise would blow that dust out with an air compressor. *Id.* This also released dust into the air that Cruise breathed. *Id.*

Watson identified several manufacturers of motor starters that he and Cruise worked on: Cutler-Hammer, Squire D., Siemens, Ellis, Allen-Bradley, Westinghouse, and General Electric. *Id.* at 101:8-22. Eaton has liability for Cutler-Hammer products. [*See* ECF No. 384 p.2]. Watson testified that he and Cruise worked with equipment with brand names "Unitrol" and "Citation." [ECF No. 439-2, 102:3-21]. Cutler-Hammer used Citation motor starters housed in Unitrol motor control centers from 1967 to 1997. [ECF No. 439-4, 40:10-22]. Eaton's sworn discovery responses from a prior case establish that Citation motor starters used parts that contained asbestos. [ECF No. 439-7, pp. 28-31].

Watson testified that Cruise worked on "thousands" of motor starters over the course of his career. [ECF No. 439-2, 265:8-22]. Jobsites where Cruise worked contained up to a dozen motor control centers, each of which contained dozens of individual motor starters. *Id.* at 266:1-271:2. However, when asked about Cutler-Hammer motor starters specifically, Watson could not do any of the following: (1) recall a specific time that Cruise repaired a Cutler-Hammer arc chute; (2) say how often Cruise repaired arc chutes on Cutler-Hammer products; or (3) quantify what percentage of Cruise's work with motor starters was with Cutler-Hammer motor starters as opposed to other manufacturers. *Id.* at 237:13-238:19.

## LEGAL STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences

and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## CHOICE OF LAW

The first choice of law issue is whether state law or Maritime law applies. Maritime law may apply to Plaintiff's claims that Cruise was exposed to asbestos while on board a ship, but state law applies to Plaintiff's claims that Cruise was exposed to asbestos on land. *Connor v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 458-59; *Andrews v. A W Chesterton Co.*, No. 2:13-CV-2055-RMG, 2015 WL 12831323, at *3 (D.S.C. May 29, 2015) (Gergel, J.) (following the *Connor* opinion);

*Haskins v. 3M Co.*, No. 2:15-CV-02086-DCN, 2017 WL 3118017, at *6 (D.S.C. July 21, 2017) (Norton, J.) (same). Here, Plaintiff's claims with respect to Eaton relate to alleged exposure at industrial jobsites on land. [ECF No. 439 p.2]. Therefore, state law applies to all claims before the Court on this motion.

The second choice of law issue is which state's law applies. As the forum state, South Carolina's choice of law rules govern choice of law questions. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In a wrongful death action, South Carolina courts apply the substantive law of the state where the injury resulting in death occurred. *Anderson v. Lane*, 97 F. Supp. 265, 267 (E.D.S.C. 1951).

Plaintiff alleges potential exposure at "multiple jobsites primarily throughout North and South Carolina." [ECF No. 439 p.2]. Because Plaintiff's response to Eaton's motion for summary judgment does not specifically name another state, the Court interprets Plaintiff's allegations as exposure to asbestos-containing Eaton products at facilities in North and South Carolina. *See id*. Plaintiff alleges that each of these exposures was a substantial cause of Cruise's mesothelioma and death. *Id.* at 12. This presents a problem under South Carolina's *lex loci delecti* choice of law rule: the place of injury is open to debate because mesothelioma results from repeated exposure to asbestos-based products over a period of several years. *See Hardy v. Johns-Manville Sales Corp.*, 509 F. Supp. 1353 (E.D. Tex. 1981) ("[the disease's] latent period makes it legally and medically impossible to state with certainty . . . which exposure to asbestos caused or contributed to the disease.").

However, the Court does not need to engage in this analysis because the law in North and South Carolina is the same regarding a determination of whether exposure is actionable. North and South Carolina use the "frequency, regularity, and proximity" test set forth in *Lohrmann v.*

*Pittsburgh Corning Corporation. Henderson v. Allied Signal, Inc.*, 373 S.C. 179, 644 S.E.2d 724 (2007) (adopting the *Lohrmann* test for actionable exposure in South Carolina); *Jones v. Owens-Corning Fiberglass Corp.*, 69 F.3d 712, 716 (4th Cir. 1995) (applying the *Lohrmann* test in a case under North Carolina law). Accordingly, Plaintiff must show "actionable exposure" under the standard set forth in *Lohrmann.*

## DISCUSSION

### I.     Plaintiff has put Forward Evidence of Actionable Exposure.

In order to survive summary judgment, Plaintiff must put forward evidence of "actionable exposure." *Henderson*, 373 S.C. at 185, 644 S.E.2d at 727. "Actionable exposure" is shorthand for the showing required to raise a jury question on causation in an asbestos case. *See Lohrmann*, 782 F.2d 1156, 1162–63 (4th Cir. 1986). To support a reasonable inference of substantial causation from circumstantial evidence, Plaintiff must provide evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked. *Id.* This is known as the "frequency, regularity, and proximity test." *Henderson*, 373 S.C. at 185, 644 S.E.2d at 727 (citing *Lohrmann* at 1162).[1]

Plaintiff raises genuine issues of material fact regarding Cruise's exposure to a specific product that contained asbestos in close proximity to where the plaintiff actually worked. Watson's testimony specifically identifies Citation motor starters housed in Unitrol motor control centers.

---

[1] Plaintiff urges the Court to apply the *Lohrmann* factors less strictly in this case because it concerns mesothelioma rather than asbestosis. [ECF No. 439 p. 11]. However, under North Carolina and South Carolina law, courts apply the test identically to mesothelioma and asbestosis. *Connor v. Norfolk S. Ry. Co.*, No. 1:17CV127, 2018 WL 6514842, at *3, n.5 (M.D.N.C. Dec. 11, 2018) (collecting cases); *see also Pace*, 642 F. App'x at 247-48; *Foushee v. R.T. Vanderbilt Holding Co., Inc.*, No. 5:17-CV-00071-M, 2020 WL 7407873, at *4 (E.D.N.C. Dec. 17, 2020); *Sparkman v. A.W. Chesterton Co.*, No. 2:12-CV-02957-DCN, 2014 WL 7369489, at *3 (D.S.C. Dec. 29, 2014) (same under South Carolina law).

Plaintiff puts forth evidence, by way of Cutler-Hammer admissions, that tends to show this product contains asbestos. Watson's testimony establishes Cruise's proximity to the product when he describes Cruise's work on motor starters. Cruise would clean the arc shields with an abrasive crocus cloth. This process created dust residue which they blew out with an air compressor. This released the dust into the air, which Cruise breathed. Plaintiff's evidence is sufficient to create a genuine issue of material fact regarding exposure to a specific product that contained asbestos in close proximity to where Cruise worked.

However, Plaintiff fails to raise a genuine issue of material fact regarding whether Cruise was exposed on a regular basis over some extended period of time. Watson's testimony is not sufficient to establish the frequent and regular exposure required to survive a motion for summary judgment under *Lohrmann*. In *Jones v. Owens-Corning Fiberglass Corp.*, the United States Court of Appeals for the Fourth Circuit held that the plaintiffs showed evidence of frequent and regular exposure where they were exposed to asbestos dust on a daily basis from the defendant's product for approximately 20 years. 69 F.3d 712 (4th Cir. 1995). In *Slaughter v. Southern Talc Co.*, the United States Court of Appeals for the Fifth Circuit came to the same conclusion where the plaintiffs were exposed to asbestos dust from the defendant's products on a daily basis. 949 F.2d 167, 170 (5th Cir. 1991). On the other hand, in *Lohrmann*, the Fourth Circuit held that exposure to the defendant's product on "ten to fifteen occasions of between one and eight hours duration" was insufficient to establish frequency and regularity. *Lohrmann* 782 F.2d at 1163.

Here, viewed in the light most favorable to the Plaintiff, Watson's testimony still falls short of raising a genuine issue of material fact regarding regularity and frequency of exposure. Watson testified that he and Cruise cleaned arc shields "repeatedly" throughout his long career. He testified that he worked on "thousands" of motor starters. At first glance, the word "thousands"

7

seems to show frequent and regular exposure. However, Watson testified that each jobsite he worked contained up to a dozen motor control centers, each of which housed dozens of individual motor starters. With this many motor starters at each jobsite, it would not take many instances of exposure to reach a number in the thousands. Even if Defendant manufactured every motor starter Cruise ever worked on, this testimony does not establish the daily exposure seen in *Jones* and *Slaughter*.

But Defendant *did not* manufacture every motor starter Cruise ever worked on. The motor starters Cruise worked with were manufactured by multiple companies, including Allen-Bradley, Square D, Westinghouse, GE, and Cutler-Hammer. When asked to describe Cruise's interaction with Cutler-Hammer motor starters, Watson could not: (1) recall any specific instance of Cruise working with Cutler-Hammer motor starters; (2) provide any testimony regarding how frequently Cruise would have worked with Cutler-Hammer motor starters; or (3) quantify how often Cruise worked with Cutler-Hammer motor starters compared to other brands of motor starters. Watson's testimony arguably fails to show frequent and regular exposure to motor starters generally. As to Eaton, the frequency and regularity is further decreased by the fact that Cutler-Hammer is not responsible for every motor starter Cruise encountered. Watson was unable to provide testimony that would allow the Court to quantify how many of these motor starters were Cutler-Hammer. Without more evidence, the Court cannot find a genuine issue of material fact regarding the frequent and regular exposure to Cutler-Hammer motor starters. The *Lohrmann* standard requires the Plaintiff to show exposure to Defendant's product on a regular basis over some extended period of time. Watson's testimony, viewed in the light most favorable to the Plaintiff, does not raise a genuine issue of material fact on the frequency and regularity of exposure.

## CONCLUSION

Plaintiff has not provided evidence of exposure to support a reasonable inference of substantial causation. Accordingly, Eaton is entitled to judgment as a matter of law, and its motion for summary judgment, ECF No. 384, is GRANTED on all claims.[2]

IT IS SO ORDERED.

January 19, 2021  
Florence, South Carolina

/s/Sherri A. Lydon  
Sherri A. Lydon  
United States District Judge

---

[2] Because the Court grants summary judgment on all claims, Defendant Eaton Corporation's remaining pending motions are MOOT.